### UNITED STATES v. DUCAS.

(Circuit Court of Appeals, Second Circuit. January 7, 1897.)

CUSTOMS DUTIES—CLASSIFICATION—ACETATE OF COPPER.

Acetate of copper, though a variety of verdigris, and known commercially as "pure or distilled verdigris," was dutiable under paragraph 76 of the tariff act of 1890, as a chemical compound, and was not entitled to free entry under paragraph 749 of the same act, as verdigris or subacetate of copper. 71 Fed. 954, reversed.

This is an appeal from a decision of the circuit court, Southern district of New York (71 Fed. 954), reversing a decision of the board of general appraisers, which affirmed the action of the collector of the port of New York in assessing duty on certain imported merchandise.

James T. Van Rensselaer, for the United States.
Albert Comstock, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The article imported is acetate of copper. The collector assessed it for duty under paragraph 76, which imposes 25 per cent. ad valorem on "products or preparations known as alkalies, * * * and all combinations of the foregoing and all chemical compounds and salts, not specially provided for in this act." The importers protested, claiming it was entitled to free entry under paragraph 749, which reads: "749. Verdigris, or subacetate of copper." The board of appraisers found, and it is conceded, that the article is acetate of copper; that it is a chemical salt, and, of course, a chemical compound; and that it is not subacetate of copper. The testimony produced by the importers shows that there are several kinds of verdigris known in trade and commerce in this country; 10 different varieties, says one witness. These differ in purity, in dryness, in form, but commercially they are all spoken of as verdigris. Among them is the subacetate of copper, and also the article here imported. The witness called by the government, speaking from a business experience of 25 or 26 years, testifies that commercial verdigris included different varieties of subacetate of copper, which differed slightly in the presence of acetic acid or copper; and that there is also a neutral acetate of copper, which is known by the term "pure or distilled verdigris."

The witness further testified that when people in trade asked for "commercial verdigris," or simply for "verdigris," they would be given the subacetate; when they want the pure, they ask for "distilled" or "pure verdigris"; but he admitted that if any one should come into his place, and ask for a sample of every grade of verdigris that he had, he would include both the "commercial" and the "distilled." There is in reality no conflict of testimony. Both acetate of copper and subacetate of copper are known in commerce as "verdigris," but they are different varieties of verdigris, of different purity and grade. If the word "verdigris" is used in its broadest meaning, it will include the acetate of copper, such as was imported in this case; if used in a more restricted sense, it may or may not include this variety.

In what sense, then, did congress use the word? Examination of the statutes gives a conclusive answer to this question. In the Revised Statutes (section 2504, Schedule M, re-enacting an act of 1861) the broad general provision for all chemical compounds and salts does not appear. Many different chemical compounds and salts, however, are provided for either specifically by name, or by inclusion in general classes, not as comprehensive as the "chemical compound" group. There is a provision making certain enumerated acetates dutiable, and among them the acetate of copper, and in the same act the free list includes "verdigris, or subacetate of copper." Here is a plain distinction drawn by congress between the two substances,—acetate and subacetate. The one which, although a variety of verdigris, is known to the trade as "pure or distilled verdigris," is assessed for duty; and the other, also a variety of verdigris, and known as "commercial verdigris," is put on the free list. The article thus put on the free list is the article which congress calls "verdigris," making the scope of that word entirely plain by coupling it with the defining phrase "or subacetate of copper." Under this act there could be no possible doubt how to classify the present importation. It would pay duty as an acetate of copper, because, although recognized in commerce as one of the verdigris family, it was not the member of that family which congress had designated as duty free.

In the tariff act of 1883 there was a change of phraseology. Several of the minor classifications of various chemical compounds disappeared from the duty schedules; among them, the provisions for acetates of ammonia, baryta, copper, iron, lead, etc. And for the first time in a tariff act we find the comprehensive phrase, "all chemical compounds and salts, by whatever names, and not specially enumerated or provided for in this act." Manifestly, the acetate of copper, having lost its old classification, with acetates of baryta, iron, lead, etc., would go into this broad group, unless it were elsewhere specially provided for. Being a variety of verdigris, it would come within that classification, if congress had made it broad enough to cover all varieties of verdigris. But congress seems to have been careful to restrict the privilege of free importation to the same variety of verdigris to which it had accorded it before. The paragraph of the free list in the act of 1883 reads: "635. Uranium,

oxide of, verdigris or subacetate of copper." The failure to strike out the qualifying description "subacetate of copper" is most significant. While the tariff of 1883 was in force, the treasury department made a decision upon "distilled verdigris or acetate of copper," which is the same article in question here, classifying it among the "chemical compounds and salts." Synopsis Treas. Dec. No. 8,593, Dec. 23, 1887. The contemporaneous interpretation of tariff acts by executive officers charged with the duty of acting under such statutes may be considered in construing such legislation; and it may be presumed that congress had this decision of the treasury department in view when it passed the act of 1890. The pertinent paragraphs of that act have already been quoted. They are not materially different from those in the act of 1883. It must be assumed then that congress, when carefully retaining the same phrase, "verdigris or subacetate of copper," which it had used in the two tariff acts immediately preceding the act of 1890, intended to give free entry only to the same article which had been accorded such privilege under those earlier acts. The decision of the circuit court is reversed.